UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

```
_____
                                        )
In Re: James S. DiGiandomenico,         )    Chapter No. 11
                                        )
a/k/a Jay S. DiGiandomenico,            )
                                        )    Case No. 06-20257 JBH
        DEBTOR                          )
                                        )
Jay and Jill Hachigian,                 )    Adversary Proceeding No.
                                        )
        PLAINTIFFS                      )
                                        )
v.                                      )
                                        )
James S. DiGiandomenico                 )
                                        )
        DEFENDANT                       )
_____ )
```

## COMPLAINT FOR NON-DISCHARGEABILITY

NOW COME the Plaintiffs, Jay and Jill Hachigian, by and through their attorneys, Shlansky & Co., LLP, and, pursuant to Rules 4004 and 4007 complain against the dischargeability of Defendant-Debtor DiGiandomenico's debt to them, as will be further referenced below.  Specifically, the Debtor made multiple knowing and fraudulent misrepresentations to the Plaintiffs, with the clear intent to deceive and defraud them, with regard to the construction of their home in Weston, Massachusetts, for which he was the contractor between August 2001 and June 2003:

### PARTIES

1. The Plaintiffs are individuals who reside in Weston, Massachusetts.

2. The Defendant Debtor James S. DiGiandomenico (the "Debtor") is an individual residing in Northborough, Massachusetts, and is the Debtor in this Chapter 11 bankruptcy case filed in the District of Maine on June 28, 2006.

**FACTUAL ALLEGATIONS**

3. On or about July 25, 2001, the Hachigians entered into an Abbreviated Form of Agreement between Owner and Contractor (the "Contract"), with the Debtor's corporate entity, JSD Builders, Inc. ("JSDBI"), to construct a house (hereinafter, the "Project") in Weston, Massachusetts, modeled after a home that the Debtor had constructed and which was featured in Boston Magazine's May 2000 edition, referred to as "Design Home 2000."

4. The Contract was a fixed cost contract in the amount of One Million Two Hundred Thousand Dollars ($1,200,000.00), which was subsequently amended by specific agreement of the parties to add defined features comprising a further Two Hundred Seventy-Eight Thousand Seven Hundred Forty-Seven Dollars ($278,747.00) of work, totaling One Million Four Hundred Seventy-Eight Thousand Seven Hundred Forty Seven Dollars ($1,478,747.00)

5. The Contract specified that the completion time of construction would be one year from the start of construction, or March 2003, with time being of the essence.

6. Beginning in August 2001, when the site preparation commenced, and continuing throughout the course of construction, the Debtor personally represented and certified in writing that percentages of completion had been attained, and dollar values payable on account thereof had been accrued, on which the Hachigians relied in making

payments to the Debtor. In fact, the Debtor knowingly and falsely misrepresented the percentages of completion of the Project at all times throughout the course of construction, with the intent to defraud the Hachigians and to induce them into paying significantly more amounts than actually due under the Contract.

7. Between August 2001 and December 2002, the Debtor made eighteen (18) requests for payment from the Hachigians, which payments were made timely by the Hachigians based on the Debtor's personal certifications of the amount of work completed.

8. In or about December 2002, the Hachigians became concerned that work on the Project suffered from significant defects and was running well over budget, in light of the fact that the Project was approximately half-way complete and because they had disbursed a significant amount of funds. When the Hachigians expressed their concerns to the Debtor, the Debtor personally reassured them that he would fix the situation and complete the Project within the contractual timeline.

9. In or about January 2003, the Hachigians noticed that there was a significant decrease in the amount of construction activity at the site, with little or no progress being made, which was directly contradictory to the Debtor's personal assurances, which were knowing falsehoods, made with an intent to deceive and defraud the Hachigians.

10. In or about February 2003, the Debtor suggested that the Hachigians place the balance of the funds remaining to complete the house in an escrow account to ensure payment. On information and belief, this request was made by the Debtor to avoid having to approach the Hachigians directly with requests for payment and to justify the work supported by each request, as Debtor intended to use the monies without certifying

to the amount of work completed, in violation of his contractual obligations and his personal assurances to the contrary.

11. On or about February 10, 2003, the Hachigians hired David Phinney, a construction supervisor and expert, to assess the deficiencies in the Debtor's performance as well as the cost overruns to which the Debtor had certified. Mr. Phinney determined that the Debtor had billed the Hachigians for several items, including doors and windows at full value which were not complete, and which the Debtor knew were incomplete at the time he billed the Hachigians in full. Mr. Phinney furthermore advised the Hachigians that the Debtor engaged in a practice of commencing work on change orders that had not been approved by the Hachigians, a practice that is unacceptable in the construction industry based on Mr. Phinney's expert opinion. In addition, Mr. Phinney confirmed that the Debtor had authorized the use of pre-made items or items built by the Debtor, contrary to his personal representations to the Hachigians. The Debtor knowingly and fraudulently misrepresented to the Hachigians that he had used the contractually-agreed to items. Mr. Phinney furthermore determined that the Debtor's front-loading of payments, based on his personal misrepresentations of work completed, would make it impossible for the Debtor to complete the Project within the terms of the Contract. The Debtor fraudulently induced the Hachigians into making these front-loaded payments by assuring them that the payments were commensurate with the work completed under the Contract.

12. On information and belief, the Debtor falsely and knowingly represented completion percentages on the Project in order to obtain payments from the Hachigians prior to those amounts actually being due.

13. The Debtor failed to complete the Project by the completion date of March 2003, most glaringly evidenced by the fact that the roof on the house was not complete by such time, a full year after construction began.

14. Relying upon the Debtor's personal assurances that the Project would be completed within the budget, the Hachigians continued to make payments to the Debtor.

15. On or about May 21, 2003, frustrated by the Debtor's repeated, unfulfilled promises and unreasonable demands for payment without actual progress on the Project, the Hachigians refused to pay any more amounts to the Debtor, exercising their right to do so to prevent further monetary loss.

16. On or about May 25, 2003, the Debtor failed to respond to any communications from the Hachigians. The following month, three months after the contractual completion date of March 2003, the Debtor quit the Project entirely, absconding with funds elicited from the Hachigians to which he was not entitled.

17. Mr. Phinney, the Hachigians' consultant, determined that, as of June 2003, sixty percent (60%) or less of the work was complete, although the Debtor had wrongly induced the Hachigians into paying One Million Eighty-Seven Thousand Four Hundred Fifty-Three Dollars ($1,087,453.00), or seventy-four percent (74%) of the fixed cost of the Contract.

18. The total cost of the work to complete the Project has subsequently been shown to be $2,042,921.00 (before accounting for any factor for diminished use and enjoyment, required repairs to defective work, or other consequential costs), and hence the work that was actually completed was only fifty-three percent (53%) complete.

19. This overbilling, which was premised on the Debtor's personal certifications of work completed, induced the Hachigians to pay for twenty-one percent (21%) more of the Project's total work than was actually complete; thus, the Hachigians were, by dollar value, overcharged for the work actually completed by a factor of forty percent (40%).

20. On information and belief, the Debtor continues to conduct his business operations under the names: (i) "JSD Building Co., Inc.," a corporation organized in the Commonwealth of Massachusetts, for which Mr. DiGiandomenico serves as President and Treasurer and as a director; and (ii) "Underdog Construction Company, Inc.," a corporation organized in the State of New Hampshire, which is, on information and belief, owned by the Debtor's daughters who are approximately eighteen and twenty years of age.  On information and belief, JSDBI and the Debtor's new business operations are not legitimately separate entities from the Debtor.

21. Furthermore as described above, the Debtor acted in an individual capacity when he made knowingly false personal certifications to the Hachigians regarding, among other things, the percentages of work completed on the Project, which induced them into paying him far more than was due under the terms of the Contract.

22. Based on, *inter alia*, the Debtor's personal and knowingly fraudulent misrepresentations (as referenced hereinabove), the Hachigians filed suit against the Debtor personally in Middlesex Superior Court, Civil Action No. 05-03829, on October 31, 2005, for his tortious conduct involving misrepresentations and fraudulent inducements of payments based on, among other things, his personal certifications of payments that were not commensurate with work actually completed.

23. On June 28, 2006, the Hachigians' case against the Debtor was stayed due to the Debtor's bankruptcy proceedings.

24. The Hachigians, however, did not receive notice of the bankruptcy, or any of the associated filings, from the Bankruptcy Court, in light of the fact that their address was entirely omitted from the mailing matrix.[1]

25. Specifically, the Hachigians were not put on notice of the bar date of the complaints for determination of dischargeability, as they did not receive the Notice of the Chapter 11 Bankruptcy Case, Meeting of the Creditors, and Deadlines[2] (attached hereto, together with the highlighted mailing matrix, as Exhibit A).

## COUNT I
## NON-DISCHARGEABILITY

26. The Hachigians repeat and reallege the allegations set forth above in paragraphs 1 through 25, as if fully set forth herein.

27. The actions of the Debtor as set forth above, particularly his personal certifications of payments that were not commensurate with work actually completed on the Project, which misrepresentations Debtor knowingly and fraudulently made with the intent to deceive the Hachigians, and upon which the Hachigians reasonably relied in continuing to make payments to him.

28. These actions, *inter alia*, constitute the Debtor's effort to obtain money, property, or services by false pretenses, false representations, and actual fraud, within the meaning of 11 U.S.C. §523(a)(2)(A).

---

[1] Additionally, the debt was incorrectly scheduled in the amount of *$564,174* to Jay and Kay Hachigian, c/o David J. Shlansky, Esq., 1762 Massachusetts Avenue, *Boston*, MA 02420 (emphasis added).

[2] This notice provided that the deadline to file a Complaint to Determine Dischargeability of certain debts was October 2, 2006.

29. In light of the omission of their address from the mailing matrix, the Hachigians: (i) were not "scheduled" within the meaning of 11 U.S.C §523(a)(3)(B)[3]; and (ii) were prevented from filing a timely request for determination of dischargeability under 11 U.S.C. §523(a)(3)(B).

30. The Hachigians are not barred by the October 2, 2006, deadline for filing a non-dischargeability complaint under 11 U.S.C. §523(a)(2)(A). Creditors are not barred from filing non-dischargeability complaints after the bar date has passed if the creditor was not given court-ordered notice of the bar date but was listed in a debtor's schedules and given verbal notice of the bankruptcy petition prior to the bar date "because the contrary result would violate due process and nullify notice requirement of USCS/BKR/4007."[4]

WHEREFORE, the Hachigians demand that the obligations owed by the Debtor to them be declared non-dischargeable debts pursuant to 11 U.S.C. §523 and that the Court grant to them such further relief as is just, including, without limitation, costs, interest, and attorneys' fees.

Dated: May 1, 2007

/s/ David J. Shlansky
David J. Shlansky, Esq.
Shlansky & Co., LLP
1762 Massachusetts Avenue
Lexington, MA 02420
(617) 497-7200

---

[3] In re Lyman, 166 BR 333 (Bankr. S.D. Ill. 1994). Omission of a creditor's name from the mailing matrix is just as impermissible as omission from formal schedules. In re Smith, 21 F.3d 660 (5th Cir. 1994).
[4] "Due Process Clause focuses on duty of debtor to give notice of relevant dates, not on the relative ease with which creditor can obtain that information without such notice." In re Rogowski, 115 BR 409 (D. Conn. 1990).

# **EXHIBIT A**

# **EXHIBIT A**

Case 07-02041    Doc 1    Filed 05/01/07    Entered 05/01/07 16:34:54    Desc Main
         Document      Page 9 of 15

FORM B9E (Chapter 11 Individual or Joint Debtor Case) (10/05)      Case Number **06−20257**

| |
|---|
| **UNITED STATES BANKRUPTCY COURT**<br>DISTRICT of Maine |
| # Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines<br>A chapter 11 bankruptcy case concerning the debtor(s) listed below was filed on 6/28/06. |
| You may be a creditor of the debtor. **This notice lists important deadlines.** You may want to consult an attorney to protect your rights. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below.<br>NOTE: The staff of the bankruptcy clerk's office cannot give legal advice. |
| **See Reverse Side For Important Explanations** |

| Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):<br>James S. DiGiandomenico<br>aka Jay S. DiGiandomenico<br>130 South Street<br>Northborough, MA 01532 ||
|---|---|
| Case Number:<br>06−20257 | Social Security/Taxpayer ID/Employer ID/Other Nos.: |
| Attorney for Debtor(s) (name and address):<br>Randy J. Creswell Esq.<br>Perkins Thompson Hinckley & Keddy, P.A.<br>One Canal Plaza<br>P.O. Box 426<br>Portland, ME 04112−0426<br>Telephone number: (207) 774−2635 | |

## Meeting of Creditors

Date: **August 1, 2006**          Time: **10:00 AM**

Location: **537 Congress Street, Room 302, , , Portland, ME 04101**

## Notice

The United States Trustee's policy is to require all debtors to bring positive identification to the meeting of creditors. Failure to do so may result in delays in processing the case.

## Deadlines:

Papers must be *received* by the bankruptcy clerk's office by the following deadlines:

### Deadline to File a Proof of Claim:

Notice of deadline will be sent at a later time.

### Foreign Creditors

A creditor to whom this notice is sent at a foreign address should read the information under "Claims" on the reverse side.

**Deadline to File a Complaint to Determine Dischargeability of Certain Debts: 10/2/06**

**Deadline to File a Complaint Objecting to Discharge of the Debtor:**
*First date set for hearing on confirmation of plan.*
Notice of that date will be sent at a later time.

**Deadline to Object to Exemptions:**
Thirty (30) days after the *conclusion* of the meeting of creditors.

## Creditors May Not Take Certain Actions:

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

| **Address of the Bankruptcy Clerk's Office:**<br>537 Congress Street<br>Portland, ME 04101−3318<br>Telephone number: (207)780−3482 | **For the Court:**<br>Clerk of the Bankruptcy Court:<br>CES |
|---|---|
| Hours Open: Monday − Friday 8:00 AM − 1:00 PM 2:00 PM − 4:30 PM | Date: 7/11/06 |

# EXPLANATIONS

FORM B9E (10/05)

| | |
|---|---|
| Filing of Chapter 11 Bankruptcy Case | A bankruptcy case under Chapter 11 of the Bankruptcy Code (title 11, United States Code) has been filed in this court by or against the debtor(s) listed on the front side, and an order for relief has been entered. Chapter 11 allows a debtor to reorganize or liquidate pursuant to a plan. A plan is not effective unless confirmed by the court. You may be sent a copy of the plan and a disclosure statement telling you about the plan, and you might have the opportunity to vote on the plan. You will be sent notice of the date of the confirmation hearing, and you may object to confirmation of the plan and attend the confirmation hearing. Unless a trustee is serving, the debtor will remain in possession of the debtor's property and may continue to operate any business. |
| **Legal Advice** | The staff of the bankruptcy clerk's office cannot give legal advice. Consult a lawyer to determine your rights in this case. |
| Creditors Generally May Not Take Certain Actions | Prohibited collection actions are listed in Bankruptcy Code § 362. Common examples of prohibited actions include contacting the debtor by telephone, mail or otherwise to demand repayment; taking actions to collect money or obtain property from the debtor; repossessing the debtor's property; starting or continuing lawsuits or foreclosures; and garnishing or deducting from the debtor's wages. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. |
| Meeting of Creditors | A meeting of creditors is scheduled for the date, time and location listed on the front side. *The debtor (both spouses in a joint case) must be present at the meeting to be questioned under oath by the trustee and by creditors.* Creditors are welcome to attend, but are not required to do so. The meeting may be continued and concluded at a later date without further notice. The court, after notice and a hearing, may order that the United States trustee not convene the meeting if the debtor has filed a plan for which the debtor solicited acceptances before filing the case. |
| Claims | A Proof of Claim is a signed statement describing a creditor's claim. If a Proof of Claim form is not included with this notice, you can obtain one at any bankruptcy clerk's office. You may look at the schedules that have been or will be filed at the bankruptcy clerk's office. If your claim is scheduled and is *not* listed as disputed, contingent, or unliquidated, it will be allowed in the amount scheduled unless you file a Proof of Claim or you are sent further notice about the claim. Whether or not your claim is scheduled, you are permitted to file a Proof of Claim. If your claim is not listed at all *or* if your claim is listed as disputed, contingent, or unliquidated, then you must file a Proof of Claim or you might not be paid any money on your claim and may be unable to vote on a plan. The court has not yet set a deadline to file a Proof of Claim. If a deadline is set, you will be sent another notice. A secured creditor retains rights in its collateral regardless of whether that creditor files a Proof of Claim. Filing a Proof of Claim submits the creditor to the jurisdiction of the bankruptcy court, with consequences a lawyer can explain. For example, a secured creditor who files a Proof of Claim may surrender important nonmonetary rights, including the right to a jury trial. **Filing Deadline for a Foreign Creditor:** The deadlines for filing claims set forth on the front of this notice apply to all creditors. If this notice has been mailed to a creditor at a foreign address, the creditor may file a motion requesting the court to extend the deadline. |
| Discharge of Debts | Confirmation of a chapter 11 plan may result in a discharge of debts, which may include all or part of your debt. See Bankruptcy Code § 1141(d). Unless the court orders otherwise, however, the discharge will not be effective until completion of all payments under the plan. A discharge means that you may never try to collect the debt from the debtor except as provided in the plan. If you believe that a debt owed to you is not dischargeable under Bankruptcy Code § 523(a)(2), (4), or (6), you must start a lawsuit by filing a complaint in the bankruptcy clerk's office by the "Deadline to File a Complaint to Determine Dischargeability of Certain Debts" listed on the front side. The bankruptcy clerk's office must receive the complaint and any required filing fee by that Deadline. If you believe that the debtor is not entitled to receive a discharge under Bankruptcy Code § 1141(d)(3), you must file a complaint with the required filing fee in the bankruptcy clerk's office not later than the first date set for the hearing on confirmation of the plan. You will be sent another notice informing you of that date. |
| Exempt Property | The debtor is permitted by law to keep certain property as exempt. Exempt property will not be sold and distributed to creditors, even if the debtor's case is converted to chapter 7. The debtor must file a list of all property claimed as exempt. You may inspect that list at the bankruptcy clerk's office. If you believe that an exemption claimed by the debtor is not authorized by law, you may file an objection to that exemption. The bankruptcy clerk's office must receive the objection by the "Deadline to Object to Exemptions" listed on the front side. |
| Bankruptcy Clerk's Office | Any paper that you file in this bankruptcy case should be filed at the bankruptcy clerk's office at the address listed on the front side. You may inspect all papers filed, including the list of the debtor's property and debts and the list of the property claimed as exempt, at the bankruptcy clerk's office. |
| Foreign Creditors | Consult a lawyer familiar with United States bankruptcy law if you have any questions regarding your rights in this case. |

−− Refer to Other Side for Important Deadlines and Notices −−

| UNITED STATES BANKRUPTCY COURT MAINE | | PROOF OF CLAIM |
|---|---|---|
| Name of Debtor<br>James S. DiGiandomenico | Case Number<br>06-20257 | |

**NOTE:** This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. §503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property): | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | |
|---|---|---|
| Name and Address where notices should be sent: | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | 06-20257 |
| Telephone Number: | | THIS SPACE IS FOR COURT USE ONLY |
| Last four digits of account or other number by which creditor identifies debtor: | Check here if   ☐ replaces<br>this claim      ☐ amends       a previously filed claim, dated:_____ | |

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☐ Other _____

- ☐ Retiree benefits as defined in 11 U.S.C. §1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of your SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
     (date)              (date)

**2. Date debt was incurred:**

**3. If court judgment, date obtained:**

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

**Unsecured Nonpriority Claim  $_____**
☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim**
☐ Check this box if you have an unsecured priority claim, all or part of which is entitled to priority

   Amount entitled to priority $_____

   Specify the priority of the claim:
☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. §507(a)(5).

**Secured Claim**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

   Brief Description of Collateral:
   ☐ Real Estate   ☐ Motor Vehicle   ☐ Other_____

   Value of Collateral:   $_____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

☐ Up to $ 2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(__).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**5. Total Amount of Claim at Time Case Filed:**    $_____  _____  _____  _____
                                                       (unsecured)     (secured)      (priority)       (Total)

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**7. Supporting Documents:**  *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien.  DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Date-Stamped Copy:**    To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

FORM B10 (Official Form 10) (10/05)

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances, such as bankruptcy cases that are not filed voluntarily by a debtor, there may be exceptions to these general rules.*

## ---- DEFINITIONS ----

*Debtor*

The person, corporation, or other entity that has filed a bankruptcy case is called the debtor.

*Creditor*

A creditor is any person, corporation, or other entity to whom the debtor owed a debt on the date that the bankruptcy case was filed.

*Proof of Claim*

A form telling the bankruptcy court how much the debtor owed a creditor at the time the bankruptcy case was filed (the amount of the creditor´s claim). This form must be filed with the clerk of the bankruptcy court where the bankruptcy case was filed.

*Secured Claim*

A claim is a secured claim to the extent that the creditor has a lien on property of the debtor (collateral) that gives the creditor the right to be paid from that property before creditors who do not have liens on the property.

Examples of liens are a mortgage on real estate and a security interest in a car, truck, boat, television set, or other item of property. A lien may have been obtained through a court proceeding before the bankruptcy case began; in some states a court judgment is a lien. In addition, to the extent a creditor also owes money to the debtor (has a right of setoff), the creditor´s claim may be a secured claim. (See also *Unsecured Claim*.)

*Unsecured Claim*

If a claim is not a secured claim it is an unsecured claim. A claim may be partly secured and partly unsecured if the property on which a creditor has a lien is not worth enough to pay the creditor in full.

*Unsecured Priority Claim*

Certain types of unsecured claims are given priority, so they are to be paid in bankruptcy cases before most other unsecured claims (if there is sufficient money or property available to pay these claims). The most common types of priority claims are listed on the proof of claim form. Unsecured claims that are not specifically given priority status by the bankruptcy laws are classified as *Unsecured Nonpriority Claims* .

## Items to be completed in Proof of Claim form (if not already filled in)

**Court, Name of Debtor, and Case Number:**
Fill in the name of the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the name of the debtor in the bankruptcy case, and the bankruptcy case number. If you received a notice of the case from the court, all of this information is near the top of the notice.

**Information about Creditor:**
Complete the section giving the name, address, and telephone number of the creditor to whom the debtor owes money *or* property, and the debtor´s account number, if any. If anyone else has already filed a proof of claim relating to this debt, if you never received notices from the bankruptcy court about this case, if your address differs from that to which the court sent notice, or if this proof of claim replaces or changes a proof of claim that was already filed, check the appropriate box on the form.

1. **Basis for Claim:**
Check the type of debt for which the proof of claim is being filed. If the type of debt is not listed, check "Other" and briefly describe the type of debt. If you were an employee of the debtor, fill in your social security number and the dates of work for which you were not paid.

2. **Date Debt Incurred:**
Fill in the date when the debt first was owed by the debtor.

3. **Court Judgments:**
If you have a court judgment for this debt, state the date the court entered the judgment.

4. **Classification of Claim**
   **Secured Claim:**
   Check the appropriate place if the claim is a secured claim. You must state the type and value of property that is collateral for the claim, attach copies of the documentation of your lien, and state the amount past due on the claim as of the date the bankruptcy case was filed. A claim may be partly secured and partly unsecured. (See DEFINITIONS, above).

   **Unsecured Priority Claim:**
   Check the appropriate place if you have an unsecured priority claim, and state the amount entitled to priority. (See DEFINITIONS, above). A claim may be partly priority and partly nonpriority if, for example, the claim is for more than the amount given priority by the law. Check the appropriate place to specify the type of priority claim.

   **Unsecured Nonpriority Claim:**
   Check the appropriate place if you have an unsecured nonpriority claim, sometimes referred to as a "general unsecured claim". (See DEFINITIONS, above). If your claim is partly secured and partly unsecured, state here the amount that is unsecured. If part of your claim is entitled to priority, state here the amount **not** entitled to priority.

5. **Total Amount of Claim at Time Case Filed:**
Fill in the total amount of the entire claim. If interest or other charges in addition to the principal amount of the claim are included, check the appropriate place on the form and attach an itemization of the interest and charges.

6. **Credits:**
By signing this proof of claim, you are stating under oath that in calculating the amount of your claim you have given the debtor credit for all payments received from the debtor.

7. **Supporting Documents:**
You must attach to this proof of claim form copies of documents that show the debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents. If documents are not available, you must attach an explanation of why they are not available.

**BAE SYSTEMS**
Bankruptcy Noticing Center
2525 Network Place, 3rd Floor
Herndon, Virginia 20171-3514

# CERTIFICATE OF SERVICE

```
District/off: 0100-2              User: jwinberg                  Page 1 of 2                    Date Rcvd: Jul 11, 2006
Case: 06-20257                    Form ID: B9E                    Total Served: 48

The following entities were served by first class mail on Jul 13, 2006.
 dbpos       +James S. DiGiandomenico,     130 South Street,    Northborough, MA 01532-2631
 aty          Randy J. Creswell, Esq.,     Perkins Thompson Hinckley & Keddy, P.A.,    One Canal Plaza,
               P.O. Box 426,    Portland, ME 04112-0426
 smg         +Internal Revenue Service,    c/o U.S. Attorney's Office,    P.O. Box 9718,    Portland, ME 04104-5018
 smg          Maine Department of Labor,    Bureau of Unemployment Compensation,    P.O. Box 259,
               Augusta, ME 04332-0259
 smg         +State of Maine,    Bureau of Revenue Services,    Bankruptcy Unit,    P.O. Box 9101,
               Augusta, ME 04333-0001
 ust         +Office of U.S. Trustee,     537 Congress Street, Room 302,    Portland, ME 04101-3353
1281196       54 Third Avenue,    P Box 4070,    Burlington, MA 01803-0970
1281197       A.I.M. Mutual Insurance Companies,     54 Third Avenue,    P.O. Box 4070,    Burlington, MA 01803-0970
1281198       AMC Mortgage Services,    PO Box 5926,    Carol Stream, IL 60197-5926
1281199      +Andre And Laura Mossiat,    14 Paddock Lane,    Millis, MA 02054-1054
1281200       Bay View Loan Servicing, LLC,     PO Box 391346,    Solon, OH 44139-8346
1281201      +Bengal Construction, Inc.,    56 Nickerson Road,    Ashland, MA 01721-1912
1281202      +Bevilacqua Paving Corp.,    C/O Nicole B. Caprioli, Esq, 370 Main St,    Worcester, MA 01608-1723
1281203       Brookline Bank,    PD Box 61787,    King Of Prussia, PA 09406
1281204      +Caterpilar Financial,    2120 West End Avenue,    Nashville, TN 37203-5341
1281205      +Charter Communications,    PO Box 830026,    Baltimore, MD 21283-0026
1281206       David Floyd,    1377 Village Way,    Silver Lake, NH 03875-5456
1281207       Don And Ann McGarity,    323 Gardner Road,    Tamworth, NH 03886
1281208      +Donald H.C. Libbey, Esq.,    120 Fulton Street,    Boston, MA 02109-1435
1281211      +GMAC,    PO Box 3100,    Midland, TX 79702-3100
1281209      +Geoffrey A. Domenico, Esq.,    PISCITELLI, DOMENICO & MURPHY, LLP,    171 Washington Street,
               North Easton, MA 02356-1118
1281210      +Gerrity Company Incorporated,     C/O Peter Young,    90 Oak Street, PO Box 9111,
               Newton Upper Falls, MA 02464-1439
1281212      +Gregory R. Barison, Esq,    84 State Street,    Boston, MA 02109-2202
1281214       HFC,    184-186 W Boylston St., Wachusett Plaza,    West Boylston, MA 01583
1281213      +Hancock Lumber,    409 Roosevelt Trail,    Windham, ME 04062-4821
1281215      +Highland Hardwoods,    407 Route 125,    Brentwood, NH 03833-6612
1281217      +Jacob A. Manheimer, Esq.,    Pierce Atwood,    One Monument Square,    Portland, ME 04101-1110,
              Jay & Kay Hachigan,    C/O David J. Schlansky, Esq.
1281218      +John Chapman,    C/O Gregory R. Barison, Esq.,    84 State Street,    Boston, MA 02109-2202
1281219      +Jonathan R. Doolittle, Esq.,    Verrill Dana, LLP,    One Portland Square,    Portland, MA 04101-4054
1281220      +LBM Financial, LLC,    171 Lock Drive,    Marlborough, MA 01752-7225
1281221      +LBM Financial, LLC,    PO Box 41,    Marlborough, MA 01752-0041
1281222       M&T Mortgage Corporation,    PO Box 1288,    Buffalo, NY 14240-1288
1281223      +Marcello Mallegni,    20 Box 41,    Marlborough, MA 01752-0041
1281224      +Marcello Mallegni,    894 Boston Post Road,    Marlborough, MA 01752-3767
1281225      +Massachusetts Dept Of Revenue,    PO Box 7010,    Boston, MA 02204-7010
1281226      +Mortgage Lenders Network USA, Inc.,     10 Research Parkway,    Wa CT 06492-1957
1281227      +National Grid,    PO Box 960,    Northboro, MA 01532,    Nicole B. Caprioli, Esq,   370 Main Street,
               Worcester, MA 01608-1723
1281228      +Northboro Oil Company, Inc.,    247 W. Main Street, Suite 2,    Northboro, MA 01532-3809
1281229      +Raymond C. Green, Inc.,    111 Huntington Ave., #600,    Boston, MA 02199-7687
1281230      +Raymond C. Green, Inc.,    111 Huntington Ave., No 600,    Boston, MA 02199-7687
1281231       Reali Realty, LLC,    C/O Timothy J. Bryant, Esq.,    PO Box 9546,    Portland, ME 04112-9546
1281232      +Royal Barry Wills Associates,    8 Newbury Street,    Boston, MA 02116-3273
1281233       Sallie Mae Servicing,    P.O. Box 9500,    Wilkes-Barre, PA 18773-9500
1281234      +Sprinkler Services,    PO Box 809, 16 Lamb Street,    Windham, ME 04062-0809
1281235      +Town Of Millis,    900 Main Street,    Millis, MA 02054-1512
1281236       Wachusett Lumber & Building Supply,     87 Main St,    Rutland, MA 01543-1327
The following entities were served by electronic transmission on Jul 11, 2006 and receipt of the transmission
was confirmed on:
 smg         +EDI: IRS.COM Jul 11 2006 16:49:00      Internal Revenue Service,    68 Sewall St., Room 311,
               Augusta, ME 04330-6352
1281216      +EDI: IRS.COM Jul 11 2006 16:49:00      Internal Revenue Service,    15 New Sudbury Street,
               Boston, MA 02203-0208
                                                                                              TOTAL: 2

             ***** BYPASSED RECIPIENTS *****
NONE.                                                                                         TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.
```

```
District/off: 0100-2           User: jwinberg            Page 2 of 2                Date Rcvd: Jul 11, 2006
Case: 06-20257                 Form ID: B9E              Total Served: 48

              ***** BYPASSED RECIPIENTS (continued) *****
```

**I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Service and that it is true and correct to the best of my information and belief.**

**First Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Jul 13, 2006**                    **Signature:**      *Joseph Speetjens*